Our final case this morning is No. 24-1540, Largan Precision Co. v. Motorola Mobility. Mr. Russell? Good morning. May it please the Court, Kevin Russell on behalf of Appellant Largan Precision Co., Ltd. The Board in this case made two errors of law that require vacating its decision. First, the Board refused to apply this Court's genus-species framework on grounds Motorola declines to defend in this Court. That error led it to, among other things, fail to take into account considerations like predictability in the art that this Court's cases require, but the Board did not do, because it didn't believe that those cases applied, committing the same error that this Court reversed in Bilstead v. Wakalopolis. Second, to the extent the Board suggested that this patent fails written description even under the genus-species framework because the specification disclaimed the full scope of the genus, that was wrong, too, because it failed to recognize that the disclaimer must be clear and unambiguous, a finding that it did not make. Instead, the Board applied an essential element test that it derived from Gentry Gallery that this Court has repeatedly rejected as a misreading of that case and a misapplication of the law. With respect to the first error, the Board concluded that the genus-species framework did not apply here because there are only a relatively small number of species in the   Motorola does not defend that conclusion in this Court, and, in fact, it is quite wrong for the reasons we explain in our brief, but I think you can take it as conceded at this point. Instead, Motorola argues that any error was harmless, because the genus-species— There is a situation here in which the specification says positive-negative alignment was involved here and it has particular benefits, and now they're saying that that's sufficient description for a negative-positive alignment, correct? Correct. Well, I don't understand how that can be the case. Well, that is the question that the genus-species case has asked, so first of all— Well, with genus-species, it has to be representative. I don't understand how that can be representative when they say the particular features of the genus-species are what the invention is. Well, I think that would be a reason for you to think that the Board might, if it had properly applied the genus-species case, either find that there wasn't a representative sample shown or that there was a disclaimer here, but the Board didn't make either of those findings because it didn't apply the correct test, and it expressly disavowed applying that test and asking whether this was representative. And it is black-letter APA law that when the Board misapplies the legal standard, you have to send it back for it to apply in the first instance. And I understand that much of what it had to say in this case would be relevant under the proper legal standard, and it could even lead it to reach the same conclusion on remand. But we're entitled to have a chance to persuade the Board that we should prevail under the right legal standard. And even more importantly to us, the harm from the Board's analysis in this case isn't just the invalidation of these patents, but it is the threat that it has to lens-designed patents generally, because it's always going to be possible to identify some variation of a lens design that isn't described in the specification. And it will frequently be possible to identify something in the description that is there and claim that it is an essential feature, an essential element. There are much simpler reading of what the Board is saying. Aren't they just making a factual finding that the 2012 written description would not have convinced one of ordinary skill in the art that the inventor possessed the lens agnostic or power agnostic embodiment in the first two lenses? I think that that is a reading of what they said. But this Court's genus species cases tell the Board how the steps it has to go through in order to answer that question. That is the ultimate written description question. But this Court has developed a subgenre of cases and rules. I don't understand. What case can you cite where we have said in the face of, from a Board, a clear factual finding that one of ordinary skill in the art, as a matter of fact, would not have seen adequate written description for your current claims that are being challenged, that it makes any difference whether the Board goes to genus species, goes to the gentry case, or just relies on that factual finding? So in Bill Stad, the Court reversed the Board for not taking into account, for example, predictability in the arts. In INRAE Global IP, another case that we cited, the Board specifically declined to consider predictability, and this Court reversed for that reason. But even stepping back a little farther, it's hard to imagine why the Court would develop a body of law about what should be considered in a genus species case, which is what the Court did in AREA at MBank, if it intended that to simply be an optional exercise that you can just jump to the final conclusion, even if you don't, wouldn't have reached that conclusion had you gone through the steps that the genus species analysis requires. The predictability in the arts here is not a trivial thing. It is helpful for figuring out whether somebody would understand that the undescribed version of the invention is in fact possessed by somebody, because you would have understood that the undescribed element is not important or is not part of the invention. And we tried to make these kinds of arguments to the Board. We argued and addressed at page 18 through 19 our arguments about what would predictably happen if you reversed the polarity of the first two lenses. But the Board refused to consider that as an opposite, because we didn't have a description of that version of the device in the specification. And so to the extent that Motorola's argument is simply that the Board can skip over the genus species analysis, I don't think there's any support for that. And again, I don't see why the Court would have bothered to go through developing this body of law if it was going to be simply optional. With respect to the possibility, as I admitted before, that a lot of the things that the Board considered here could be taken into account under a proper genus species analysis, we don't dispute that. We're not asking this Court to engage in substantial evidence review. Our ask here is simply to do the typical thing that the Court does when there's a legal error, where the Court determines whether the Board applied the proper legal standard. Here, you don't have to guess what standard they applied. They expressly disavowed applying the genus species cases. And if that's wrong, if Motorola's wrong that this is just a labeling exercise, then I think the only thing the Court has to do and the only thing it can do is send it back to the Board to reconsider under the proper legal analysis. And if the Board, if this Court were to do that, it may be that the Board would reach the same conclusion for the reasons that— How could they do anything but that? I mean, there's all this discussion about the particular benefits of the positive-negative alignment. How could that be representative of another genus that included the opposite alignment? So I think that is a point in Motorola's favor, in favor of a disavowal or disclaimer finding. But the Board did not recognize that the disclaimer required— You're not answering my question. What's that? You're asking for a remand because you said they didn't dot the I's and cross the T's and talk about how this could be representative of a genus including the opposite alignment. And I'm asking you, given this record, how could the Board reach any conclusion that the positive-negative alignment was a representative species for the opposite embodiment? Because the Board could, and we did argue to the Board, that that was not, for example, the patentable feature of the lens system, that in fact what distinguished it from the prior art was the third and fifth lenses and that somebody would have understood that the configuration of the doublet was not what the invention was about. And that we also cited to their own experts who testified that the reversal of the polarity of the first lens had the effect of changing it from telephoto to a wide-angle system. And somebody who understood that, who understood that that could be a predictable consequence of doing that in this particular lens system, could conclude that there was possession. But at the end of the day, I think that these are facts that tend to go to a suggestion that maybe Your Honor thinks that had they applied the right standard, had they asked the representative sample question, had they asked the right disavowal question, that the Board would have reached the same conclusion. But that is not a basis for affirmance here. And it's particularly important to the extent you think that some of this information suggests that there was a disclaimer of the sort that there was in Gentry Gallery, that this Court made clear, as it has time and time again, that such a disclaimer... I don't see Gentry Gallery resting on a disclaimer notion. I'm sorry, I didn't hear that. I don't see Gentry Gallery resting on a disclaimer notion. Well, this Court has repeatedly said that in cases like Carnegie Mellon and Amgen and Cooper Cameron. It's said that that case stands for the problem. I don't recall that that was the language that was used in Carnegie Mellon. I don't know if they use the word disclaimer. Particularly what they say is that Gentry Gallery is a case about where the inventor makes clear that he is not claiming to have invented the full scope of the genus. I call that disclaimer as a shorthand, but that's what we're talking about here. And what the Court has made clear in cases like Cooper Cameron is that that kind of message has to be conveyed clearly and unambiguously. In Johnson, the Court used the word crystal clear. And the Board did not find that here. Maybe the Board thinks that the inventor clearly thought that this was, what they said, it was an essential element of the invention. This Court has rejected the essential element test repeatedly. No, no, no. But... It's not right. It's rejected the essential element of the invention as being a requirement beyond the disclosure of the both embodiments that are being claimed. Okay. But even if that's right, the cases still make clear that if you are talking about, if you're going to reject, you're going to find a written description error because the inventor has made clear that they are not, the inventor of the full scope of the genus, that that has to be found clearly and unambiguously. And the Board did not find that here because it didn't understand that that was the test. And, again, maybe that on remand the Board will say, well, it was clear and unambiguous here. And we could have a very difficult substantial evidence appeal from that if we elected to take it. But, again, to us, the most important point is that this Court make clear that the limitation of that sort, what I've been calling disclaimer, has to be clear and unambiguous, and that it's not sufficient for Motorola or another challenger to simply identify some version of the lens assembly that isn't described in the patent because that's always going to be possible. There are thousands of permutations of every valid lens design patent, most of which have not been described. And that's the function of the genus species line of cases is to make clear that that mere failure to describe all the permutations is not a fatal written description error. And then you have to look beyond that. And you have to consider things like predictability of the art, which the Board here did not do. If I could reserve the remainder of my time. Okay. Thank you. Ms. Gelsina. May it please the Court, this is an ordinary written description case. The 2012 application is consistent from front to back. The abstract, the claims, the embodiments, descriptions of the present invention, and summary dimensions all state that the first lens is positive and the second lens is negative. In contrast, the application is clear that for the third lens, for example, it could be either positive or negative. The application also explains reasons why the first lens is positive and why the second lens is negative. The extrinsic evidence here is also one-sided. Only Motorola had an expert, and the Board found his testimony persuasive. That included his testimony that the defining feature of the first lens was its positive power, and the defining feature of the second lens was its negative power. In response, Largan only has a turning argument. Largan and the Board didn't articulate the correct standard here for a genus-species situation. What's your answer to that? This is not a genus-species case. There are times when an application or a specification teaches, discloses a species, and there's a question about whether or not that conveys possession to a skilled artisan of a genus. But in this case, regardless of whether the genus-species analytical tool is helpful, the law of written description never changes. It's still the same law. But in this case, that genus-species analytical tool isn't helpful because the specification of the 2012 application is so clear about what the inventor conveyed, as was in the scope of his invention. Did the Board analyze whether this is a genus-species case, and did it get it right? The Board declined to apply the genus-species cases here. We don't concede that the Board declined to apply it for the reason Largan argues. In their opening brief at page 22, they argue and admit that it's not clear that the reason why they argue is the reason why the Board declined to apply them here. The Board, in the beginning of its analysis, if you look at the appendix 22, it says that after it says that it's not going to apply genus-species cases, it says that a Lenz element of positive power has the opposite effect of a Lenz element of negative power. And if you look at this court's cases like Eriad and Bilstad that talk about when a species can disclose a genus, they talk about how the species has to be representative of the genus. In talking about predictability in Bilstad, they say that if a skilled artisan would not readily discern that an undisclosed species would perform similarly to the disclosed species, that the art is unpredictable. Is part of what you're arguing that the 2012 application didn't disclose a genus, but only a species? Yes. Yes, it did not disclose. I mean, so you can consider the negative Lenz or positive Lenz to be species of a larger genus if you're willing to accept that you can have opposites as members of the same genus. Often, members of a genus are something that's similar to each other. They're going to perform similarly, have the same effect. Is what you're saying that to invoke the genus-species case, you have to have a disclosure of a genus and then look to see whether there's a representative species disclosed? And here there was no disclosure of the genus in the first place. Yes, absolutely. As an Eriad, there's no broadening statement at all that would suggest that they, to the extent that this is a genus, that they considered it within the scope of, or that it was conveyed to the applicant that it would be within the scope of the application. Yes. Did the board consider the predictability of the art? Not using those words, but because they found in their genus-species analysis that a Lenz with positive power has the opposite effect of a Lenz of negative power, this court has said in Billstad that the art is unpredictable when a skilled artisan would not expect the species to perform similarly to each other. And because they made the finding that they'd have the opposite effect, we would submit that that's essentially the same finding, is that they wouldn't perform similarly. But it didn't use the language predictability in making that finding. As our brief explained, we don't think that this court needs to reach the genus-species issue, that the law of rate description is clear, and this court has never held that the board or court needs to apply certain genus-species tools whenever a patent owner argues that genus-species tools apply. We cited cases such as D3, where an arthrax, where there were arguments that there was a genus or a species and this court didn't apply any sort of special predictability analysis or otherwise, and this court has never held, and this court held in Hynex that there's no special rule for disclosure of a genus by a species. What's your response to what might be characterized as a policy argument? And we heard it again today, it's in the briefing, that basically if we affirm it's the death knell for Lenz assembly patents, because challengers will always be able to find some characteristic that wasn't specifically disclosed in the specification. That argument doesn't have any weight. Here, the 24 application, if you look at it, it many times talks about how a lens preferably has a certain feature, or it might have one feature or the other. Here, where the application is consistent about what the first lens had for its reflective polarity and the first and second lens for their powers, that was what they defined the invention to be, and we aren't arguing that you have to affirmatively disclose every shape and every color and every material. All the parade of horribles at their brief arguments is a policy argument. It's what you define your invention to be in the application is what you disclose as your invention. If there are no further questions, I'll see you again next time. Thank you. Mr. Rossman? I'm going to make a few quick points. I heard it suggested that this isn't a genus species case. That's the first time I've heard of this from Motorola on this appeal. They did not argue that this isn't a genus species case. It was suggested that this application doesn't claim a genus. I think it clearly does. It's just like Bill's study. This application, the 2012 application, didn't make any disclosure of a genus, right? No, it does. It says a first and second lens, which includes first and second lenses of both sets of polarity. It's the same, for example, in NRA Global IT, where an initial application claimed a certain kind of plastic. I thought the 2012 application said a first and second lens with a positive negative. Oh, I see what you're saying. Yes, the claims did have the polarities in them. The final patent, though, has a genus. The question here is whether that genus is adequately described by the 2012 application. I do think it's not true to say that the patent doesn't claim a genus. I think that's the argument. The argument is that the document you're trying to use to date that doesn't claim a genus. Therefore, you can't get support of an earlier priority date, because there's no written description in that earlier application for the genus. That is the argument, the written description. I don't understand what you're talking about. Every time you invent something, it's not a genus for everything like that, unless you say this is a representative sample of a genus. Let's say you have a patent that you say, I'm inventing a car. It has a combustion engine. It has brakes. It has a bunch of other things. Then a long time later, you say, I'm inventing a car. It has an engine and all these other things. The claim construction is, well, when you say engine, it includes both combustion and electric. Was that earlier thing that specifically laid out a combustion engine, a genus for all cars? Well, the question would be, in the final patent, which claims the genus of all cars, is there an adequate disclosure of the full scope of that genus in the written description that just talks about the gas cars, if I'm understanding your hypothetical correctly?  That earlier case has to have a genus in it for it to date back. Well, no, it has to adequately describe the broader genus. A genus. Yes. How does an invention that's solely directed to a car that has a combustion engine, a genus claim for cars with any type of engine? I would agree. The way I would look at it is, that is a case, and that is a Gentry Gallery disclaimer case. That is a case in which— I don't see why your case isn't exactly the same thing. You invented the application that you're trying to get back to, invented lens assemblies that had specific combinations of positive and negative, and now you're trying to say that it also included the exact opposite. I think if the board were to— Is there anywhere in that application that suggests this is a genus claim and this is a representative sample of the genus? I think by virtue of the fact that it described a lens system that had the purpose of providing high-quality images for mobile cameras, and described one species, which is absolutely typical of cases like Bill said, where they only described one species and then later expanded the claims to claim a genus. This court analyzed that under the genus-species framework. If the court ultimately thinks that—agrees with Motorola that the inventor here made clear that the invention was limited to the plus-minus configuration, that is fine for the board to say, so long as it makes clear that that's the basis— I don't think that has to happen. I don't think the inventor has to specifically have the disclaimer that you're talking about, that my invention is limited to the positive and negative. Right. I take back the word disclaimer. So long as the board finds that the inventor made unambiguously clear that what was invented was narrower, it was the ICE engine, not all engines, was narrower than the scope of the genus, that's fine. But it did not make that finding, and it needs to make that the finding that it was clear and unambiguous, and it needs to apply the proper standard. We know it didn't apply the genus-species cases because it said it didn't. Thank you. Okay. Thank you. Thank you, counsel. The case is submitted. That concludes our session for this morning.